# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **NATHANIEL DEWAYNE HARRIS,**  )  )  **Plaintiff,**  )  )  v.  )  )  **MIKE REED, in his official capacity as**  )  **Mayes County Sheriff, TURN KEY**  )  **HEALTH CLINICS, LLC, JOHN BLACK,**  )  **and ALISHA JEAN LAWHORN,**  )  )  **Defendants.**  ) | Case No. 24-CV-0241-CVE-CDL |

## OPINION AND ORDER

Now before the Court are the following motions: Defendant Turn Key Health Clinics, LLC's Motion to Dismiss and Brief in Support (Dkt. # 11); Defendant Alisha J. Lawhorn, LPN's Motion to Dismiss and Brief in Support (Dkt. # 28); and the Motion to Dismiss of Defendant John Black (Dkt. # 36). Defendants argue that plaintiff has failed to allege sufficient facts to support an inference that his constitutional rights were violated by the alleged denial of medical care while plaintiff was in custody as a pretrial detainee. Plaintiff responds that he has alleged sufficient facts to suggest that prison medical officials knew that plaintiff required medication to prevent serious blood clots and that Turn Key Health Clinics, LLC (Turn Key) took no steps to ensure that plaintiff received his medication. Plaintiff asserts that these facts are sufficient to support an inference that defendants were subjectively aware of a serious risk of harm to plaintiff, and he argues that he has stated claims for violation of his constitutional rights under a theory of deliberate indifference.

**I.**

Plaintiff was arrested on a charge of suspicion of driving while impaired and was booked into the Mayes County Jail (the Jail) after 9 p.m. on May 20, 2022. Dkt. # 2, at 3. Plaintiff suffers from

a blood-clotting disorder and he takes Eliquis, a blood thinner and anticoagulant, twice a day to prevent blood clots and stroke. Id. Plaintiff alleges that his mother went to the Jail on the night he was arrested and informed a detention officer, John Black, that plaintiff needed to take Eliquis twice daily. Id. at 4. Plaintiff informed the night nurse that he suffered from seizures and had blood clots in both legs, and the night nurse noted in the chart that plaintiff had Eliquis with him at the Jail. Id. On May 21, 2022 at approximately 12:15 p.m., Alisha Lawhorn, a licensed practical nurse, completed a medical intake form for plaintiff. Id. Plaintiff informed Lawhorn that he had a blood clotting disorder and hypotension, and he reported that he had a stroke in 2016. Id. Lawhorn verified that Eliquis had been prescribed to plaintiff, but plaintiff alleges that he did not receive the required amount of Eliquis while he was incarcerated.[1] The complaint does not contain any allegations that Lawhorn acted in a supervisory role or that Lawhorn had any further interaction with plaintiff.

By May 22, 2022, plaintiff states that he was experiencing severe pain in his legs and chest, and he was having difficulty standing and walking. Id. at 5. Plaintiff also claims that he felt nauseous and weak, and he was having trouble breathing. Id. Plaintiff informed the nurse on duty at the time of his symptoms and he stated that he needed his blood clotting medication. Id. The nurse accused plaintiff of feigning illness so he could be released on bond, and told plaintiff that he

---

[1] Plaintiff alleges that Lawhorn acted "[w]ith negligence and deliberate indifference" when she failed to ensure that he received his medication, and he frequently includes similar language throughout his complaint. Dkt. # 2, at 4. The Court will consider the underlying factual allegations when ruling on the motion to dismiss, but whether Lawhorn acted with negligence or deliberate indifference is a legal conclusion. The Court is not required to accept plaintiff's assertions concerning negligence or deliberate indifference as a factual assertion for the purpose of ruling on defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6). Wasatch Equality v. Alta Ski Lifts Co., 820 F.3d 381, 386 (10th Cir. 2016).

needed to get up and move around. Id. Plaintiff alleges that his condition continued to worsen over the course of the day, and he told Black that "something is wrong with me." Id. Black allegedly ordered plaintiff to stand up and ignored plaintiff's request for his medication. Id. Another inmate later told Black that plaintiff needed medical care, and Black allegedly shrugged and walked out of the pod. Id. Plaintiff alleges that he continued to tell Jail and Turn Key staff that he needed medical treatment throughout the night of May 22, 2022, but he was not taken to a nurse until the morning of May 23, 2022. The Turn Key nurse allegedly asked plaintiff if he was gay, refused to take his vital signs, and did not provide any medical care. Id. at 6.

Plaintiff was released from the Jail on bond at approximately 1:30 p.m. on May 23, 2022, and he states that he received only two doses of Eliquis while he was incarcerated. Id. Plaintiff immediately went to an emergency room following his release from the Jail, and he was treated for an embolism and a new blood clot in his lung. Id. Plaintiff filed this case alleging § 1983 claims against Mike Reed, Turn Key, Black, and Lawhorn, as well as a state law negligence claim against Turn Key.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing

any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants[2] argue that the allegations of the complaint do not support an inference that their conduct violated plaintiff's constitutional rights, and plaintiff's § 1983 claims against Turn Key and the individual defendants should be dismissed. Defendants concede that plaintiff's allegations would satisfy the objective component of a § 1983 claim based on deliberate indifference, but defendants contend that plaintiff has not alleged facts suggesting that they acted with the requisite state of mind to satisfy the subjective component. Plaintiff responds that each of the individual defendants knew that plaintiff needed to take medication to prevent blood clotting and failed to take any action to ensure that he received two doses of Eliquis each day he was incarcerated. Plaintiff argues that he

---

[2] Black, Lawhorn, and Turn Key have filed motions to dismiss, but Reed has not filed a motion to dismiss. The Court will refer to the moving parties as "defendants" collectively in this Opinion and Order.

can still proceed with a § 1983 claim against Turn Key, even if no individual defendant violated plaintiff's constitutional rights independently, under Crowson v. Washington County, Utah, 983 F.3d 1166 (10th Cir. 2020), and Garcia v. Salt Lake County, 768 F.2d 303 (10th Cir. 1985).

**A.**

Plaintiff alleges claims against Turn Key, Black, and Lawhorn under 42 U.S.C. § 1983. Under § 1983, a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. The elements necessary to establish a § 1983 violation "will vary based on the constitutional provision at issue." Ashcroft, 556 U.S. at 676. Regardless of the constitutional provision at issue, however, "[p]ersonal participation is an essential allegation in a § 1983 claim." Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976). In the context of § 1983 claims against multiple individual government actors, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008) (emphasis in original). "[T]he complaint must therefore 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' as to the specific constitutionally impermissible actions allegedly committed by each named defendant to survive a motion to dismiss as to each defendant." Brewer v. Gilroy, 625 Fed. App'x 827, 833 (10th Cir. 2015) (quoting Ashcroft, 556 U.S. at 678) (internal quotations omitted).[3] When the defendant is a

---

<sup>3</sup> Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

municipal entity, the "under color of state law" element of a § 1983 claim requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Plaintiff alleges that Turn Key and the individual defendants violated his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. The Eighth Amendment "imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008). To establish an Eighth Amendment violation, a plaintiff must show that a prison official acted with deliberate indifference. "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 827 (1994); Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court clarified that deliberate indifference has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind. Wilson, 501 U.S. at 298-99. The objective component of a deliberate indifference claim focuses on the severity of the harm suffered by the inmate. Estate of Jensen by Jensen v. Clyde, 989 F.3d 848, 859 (10th Cir. 2021). "To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." Martinez v. Beggs, 563 F.3d 1082, 1089 (10th Cir. 2009). However, "[t]he official's knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the particular manner in which injury might occur." Tafoya, 516 F.3d at 916 (emphasis in original). The same standards for

a deliberate indifference claim apply to pretrial detainees in state custody under the Due Process Clause of the Fourteenth Amendment. Martinez, 563 F.3d at 1088.

**B.**

The Court will initially consider whether plaintiff has adequately alleged that the individual defendants, Lawhorn and Black, subjectively disregarded a risk of harm to plaintiff. Lawhorn argues that plaintiff's allegations do not suggest that she had any interactions with plaintiff after completing the medical intake process, and there are no allegations suggesting that Lawhorn had a supervisory role in the delivery of medical care to inmates. Dkt. # 28, at 7. Lawhorn asserts that she cannot be held liable for the alleged failure of other medical providers at the Jail to give plaintiff his medication. Id. Plaintiff responds that Lawhorn was aware that he had a serious blood clotting disorder and was aware that he was in pain when he completed the medical intake process, and he alleges that Lawhorn failed to ensure that he received the prescribed amount of his medication. Dkt. # 47, at 9. Black contends that plaintiff's factual assertions concerning Black's failure to provide plaintiff medication during his incarceration are conclusory, and these allegations expressly contradict plaintiff's theory that Jail medical staff was responsible for ensuring that prisoners received appropriate medical care. Dkt. # 36, at 6. As to plaintiff's allegations that Black walked out of the pod when plaintiff was in obvious distress, Black argues that there are no allegations suggesting that Black subjectively knew that plaintiff was at risk for new blood clots or a lung embolism if plaintiff did not receive his medication or that Black actually drew such an inference and failed to act. Id. at 7. Plaintiff claims that Black was subjectively aware that plaintiff suffered from a blood clotting disorder, and he took no action to ensure that plaintiff received his medication or necessary medical care when it was obvious that plaintiff was in extreme pain. Dkt. # 44, at 9-10.

7

Plaintiff argues that he is not required to allege that Black knew of the specific medical condition from which he suffering, and he has adequately alleged that Black subjectively disregarded a serious risk of harm to plaintiff. Id. at 10.

The complaint does not provide extensive factual allegations concerning the conduct of Black or Lawhorn. Plaintiff alleges that Black was notified by plaintiff's mother that plaintiff suffered from a blood clotting disorder and that plaintiff needed to take Eliquis twice a day. Dkt. # 2, at 4. Plaintiff makes a general allegation that Black did not ensure that plaintiff actually received his medication, but there are no allegations that Black had any role in distributing medication to inmates or that Black actually told plaintiff's mother that he would assume such a duty in this case. Id. At approximately 12:15 p.m. on May 21, 2022, plaintiff met with Lawhorn to complete a medical intake form, and he notified Lawhorn that he had a blood clotting disorder. Id. Lawhorn verified that plaintiff was taking Eliquis twice a day to treat blood clotting, and she placed an order for plaintiff's medication. Id. Plaintiff claims that he was having pain and cramping at the time the medical intake form was completed by Lawhorn, but he does not allege that Lawhorn was aware or should have been aware of his pain and cramping. Id. Plaintiff makes a vague allegation that Lawhorn did not ensure that plaintiff received his medication twice daily, but he does not allege that Lawhorn had any supervisory authority over other medical personnel or that she had any further interaction with plaintiff after completing the medical intake form. Id. On the morning of May 22, 2022, plaintiff claims that his condition had worsened and he told Black that "something is wrong with me." Id. at 5. Black told Harris to stand up, and Black allegedly observed Harris attempt to stand up while he was obviously in pain. Id. Plaintiff asked Black for his medication, and another inmate told

8

Black that plaintiff needed medical attention. Id. Plaintiff alleges that "Black simply shrugged and left the pod." Id.

The Court finds that plaintiff has not alleged a plausible claim against Lawhorn based on deliberate indifference in failing to provide medical care. Plaintiff's allegations against Lawhorn solely concern the completion of a medical intake form after he was booked into the Jail, and Lawhorn accurately recorded that plaintiff had a blood clotting disorder that required medical treatment. Plaintiff argues that he has alleged that Lawhorn disregarded an obvious risk to his health by failing to ensure that he received his blood clotting medication twice a day and she should have known that he needed to be seen by a medical professional while she was completing the medical intake form. Dkt. # 47, at 9. However, plaintiff has failed to adequately allege a deliberate indifference claim against Lawhorn under either theory. Plaintiff makes a general allegation that Lawhorn failed to ensure his medication in the prescribed amount, but he does not allege that Lawhorn ever had contact with him after completing the medical intake form. Instead, plaintiff alleges that he was seen by other Turn Key nurses who failed to provide him the required medication, and it is not clear from plaintiff's allegations that Lawhorn was even present at the Jail at any time after completing plaintiff's medical intake form. Plaintiff alleges that Lawhorn accurately recorded the information he provided, confirmed that plaintiff had a prescription for Eliquis, and noted in the record that plaintiff required two doses of Eliquis per day. Dkt. # 2, at 4. Plaintiff has not alleged that Lawhorn had any supervisory authority over other nurses, and there are no factual allegations suggesting that Lawhorn had any duty to generally monitor or supervise the delivery of medical care at the Jail. Plaintiff also argues that he was in pain and cramping while he was meeting with Lawhorn to complete the medical intake form, and he claims that Lawhorn disregarded a substantial

9

risk of harm to plaintiff by failing to refer him to a medical professional with more training. Dkt. # 47, at 10-11. The amended complaint alleges that plaintiff was cramping and in pain during the completion of the medical intake form, but he has not alleged that he notified Lawhorn about his pain or that Lawhorn was subjectively aware of his condition. At most, plaintiff has alleged that Lawhorn was negligent in failing to assess plaintiff's medical condition and his alleged need for immediate medical treatment, but this is not sufficient to proceed with a § 1983 claim against Lawhorn.

Plaintiff has alleged a § 1983 deliberate indifference claim against Black under theories that Black failed to ensure that plaintiff received his medication and that Black ignored plaintiff's obvious need for medical attention. Black argues that had no duty to administer medication to inmates, as plaintiff alleges that this was the duty of Turn Key employees, and Black could not have subjectively acted with deliberate indifference by failing to ensure that plaintiff received his medication. Dkt. # 36, at 6. The Court agrees with Black that plaintiff has not adequately alleged that a detention officer can be deliberately indifferent for failing to ensure that an inmate receives medication when there is a prison medical facility responsible for providing this service. See Burwell v. City of Lansing, Michigan, 7 F.4th 456, 468-69 (6th Cir. 2021) (detention officer was at most negligent for failing to more closely supervise an inmate who was known to need medication to treat epilepsy). However, plaintiff has adequately alleged that Black was deliberately indifferent to plaintiff's need for medical evaluation on the evening of May 22, 2022. Plaintiff has alleged that Black was aware of his blood clotting disorder and his need for medication to control this condition and, for the purpose of ruling on Black's motion to dismiss, this is sufficient to support an inference that Black was subjectively aware of plaintiff's medical condition. Dkt. # 2, at 4. Plaintiff has also

alleged that Black personally observed plaintiff suffering severe pain in his legs and chest and having difficulty standing and breathing and, instead of referring plaintiff for medical treatment, Black simply walked out of the pod and ignored plaintiff's obvious need for a medical evaluation. Id. at 5. Black contends that he could not have acted with deliberate indifference, because plaintiff has not alleged facts suggesting that Black actually knew that plaintiff had a lung embolism or a blood clot and required medical treatment for these conditions. Dkt. # 36, at 7. Black also argues that the Jail had a medical facility and he was merely deferring to the medical staff when he declined to take plaintiff to be seen by a medical professional on the evening of May 22, 2022. Id. at 9. Black may attempt to develop these factual arguments during pretrial discovery but, for the purpose of a motion to dismiss, plaintiff has adequately alleged that Black was aware of plaintiff's need for medical treatment and intentionally ignored plaintiff's medical crisis that would have been obvious to a layperson. The law is clearly established that a detention officer is not deferring to medical staff by wholly ignoring a prisoner's need for medical care and abdicating his gatekeeper role by failing to inform medical staff of a prisoner's potential need for medical care. Prince v. Sheriff of Carter County, 28 F.4th 1033, 1045-47 (10th Cir. 2022); Burke v. Regalado, 935 F.3d 960, 994 (10th Cir. 2019).

The Court concludes that plaintiff has not alleged any facts suggesting that Lawhorn was deliberately indifferent to plaintiff's need for medical treatment during the single time she met with him to complete a medical intake form. There are no allegations suggesting that Lawhorn had a duty to supervise the delivery of medication to inmates or perform any task other than the completion of medical intake forms, and plaintiff has not alleged a plausible deliberate indifference claim against Lawhorn. However, plaintiff has alleged sufficient facts to state a plausible claim that Black

subjectively understood that plaintiff needed a medical evaluation for a serious medical condition on May 22, 2022 and that Black intentionally disregarded a risk of serious harm to plaintiff. The law is clearly established that a detention officer may not subjectively disregard an inmate's obvious need for medical treatment when there is a risk of serious harm to the inmate, and Black is also not entitled to qualified immunity from plaintiff's § 1983 claim at this stage of the case. Lawhorn's motion to dismiss (Dkt. # 28) should be granted, and Black's motion to dismiss (Dkt. # 36) should be denied.

## C.

Turn Key argues that plaintiff has not alleged any facts supporting an inference that he was denied medical care due to an unconstitutional policy or custom, and he may not maintain a § 1983 claim against Turn Key without satisfying the requirements applicable to a municipal liability claim under § 1983. Dkt. # 11. Plaintiff responds that he has adequately alleged that Turn Key has a custom or policy of failing to staff prison medical facilities with qualified medical personnel and that Turn Key has a well-established history of denying or minimizing medical care to inmates to increase its profit margins. Dkt. # 48.

Under § 1983, a local government or municipality may be held liable for adopting an official policy or custom causing a violation of constitutional rights, but local governments can not be sued under a respondeat superior theory of liability. Monell, 436 U.S. at 691. "To establish a claim for damages under § 1983 against municipal entities or local government bodies, the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." Moss v. Kopp, 559 F.3d 1155, 1168 (10th Cir. 2009). It is not enough for a plaintiff to allege that the actions of a governmental employee injured him. Olsen

v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002). "Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." Seamons v. Snow, 206 F.2d 1021, 1029 (10th Cir. 2000). One way for a plaintiff to prove a claim of municipal liability is to show that an express policy deprived the plaintiff of a constitutional right. Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1279 (10th Cir. 2009). Another way to establish municipal liability is to show that an action taken by a final policymaker for the governmental entity violated or caused a violation of the plaintiff's constitutional rights. Simmons v. Uintah Health Care Special Dist., 506 F.3d 1281, 1285 (10th Cir. 2007).

The first issue for the Court to consider is whether plaintiff has adequately alleged that Turn Key acted with deliberate indifference. To satisfy the objective component of a deliberate indifference claim, a medical need is objectively serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Strain v. Regalado, 977 F.3d 984, 990 (10th Cir. 2020). Plaintiff alleges that he notified medical staff that he required two doses of Eliquis per day to prevent blood clotting and hypotension, and he claims that he began to suffer severe pain and cramping when medical staff failed to ensure that he received his medication. Dkt. # 2, at 4. He claims that requested to be seen by a medical provider on May 22, 2022, and a Turn Key nurse accused plaintiff of feigning distress so he could be released on bond. Id. at 5. Plaintiff states that he felt nauseous, could not stand, and had difficulty breathing, and the Turn Key nurse simply told plaintiff to get up and move around without providing a medical examination. Id. On May 23, 2022,

plaintiff allegedly told the Turn Key nurse on duty that he was in excruciating pain and his symptoms were worsening but, instead of providing medical care, the nurse asked plaintiff if he was gay and refused to provide any medical evaluation or treatment. Id. at 6. Accepting plaintiff's allegations as true, plaintiff has adequately alleged that his medical condition was sufficiently serious that a lay person would have believed that plaintiff needed at a minimum to be assessed by a medical professional to determine if he needed medical treatment. See Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1136 (10th Cir. 2023).

As to the subjective component of his deliberate indifference claim, plaintiff has adequately alleged that Turn Key was aware that plaintiff had a serious medical condition that required at least medical assessment and possibly treatment, but Turn Key wholly failed to assess plaintiff's condition to determine what treatment was necessary to abate plaintiff's illness. This is not a situation where the plaintiff is alleging that prison medical officials negligently misdiagnosed his condition, nor is he disputing whether the medical care provided was appropriate. Instead, he is alleging that Turn Key failed to even perform a gatekeeping function to determine whether some medical care was necessary. The Tenth Court has explained that the subjective component of a deliberate indifference claim is satisfied when the defendant "knows of and disregards an excessive risk to inmate health or safety." Burke, 935 F.3d at 992. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Plaintiff has alleged that Turn Key employees were subjectively aware that he required medication to prevent blood clotting and hypotension, observed plaintiff in obvious pain, and refused to even assess his medical condition when he requested medical treatment. At the pleading stage, plaintiff's allegations are sufficient to support an inference that Turn Key staff was

subjectively aware of plaintiff's need for medical treatment, actually drew an inference that he needed a medical assessment, and refused to provide medical care. Plaintiff's allegations are sufficient to establish the objective and subjective components of a deliberate indifference claim against Turn Key.

To state a deliberate indifference claim against Turn Key, plaintiff must also allege sufficient facts to support an inference that the constitutional violation was the result of an official policy or custom of Turn Key. Plaintiff alleges that Turn Key had a custom or policy of failing to provide access to trained medical professionals and had a financial incentive to provide as little medical care as possible to inmates pursuant to Turn Key's contract with the Jail. Dkt. # 2, at 8-9. Id. Plaintiff cites numerous instances at other prison medical facilities operated by Turn Key in which medical care was inadequate or denied altogether, and he alleges that the poor medical care in this case was the result of a custom or policy of Turn Key to cut costs and prioritize financial gain over the delivery of constitutionally adequate medical care. Id. at 7-14. At the pleading stage, the Court finds that plaintiff's allegations are sufficient to support an inference that plaintiff was denied medical care for an obvious and serious medical condition due to an official policy or custom, and Turn Key's motion to dismiss (Dkt. # 11) should be denied.

**IT IS THEREFORE ORDERED** that Defendant Turn Key Health Clinics, LLC's Motion to Dismiss and Brief in Support (Dkt. # 11) and the Motion to Dismiss of Defendant John Black (Dkt. # 36) are **denied**.

**IT IS FURTHER ORDERED** that Defendant Alisha J. Lawhorn, LPN's Motion to Dismiss and Brief in Support (Dkt. # 28) is **granted**, and plaintiff's claims against Lawhorn are dismissed. Lawhorn is terminated as a party to this case.

**DATED** this 4th day of February, 2025.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE